IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KRYSTAL CONSIDINE, | ) | CASE NO. 09-CV-2062 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 22). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Krystal Considine's ("Plaintiff" or "Considine") application for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court REVERSES and REMANDS the decision of the Commissioner.

## I. INTRODUCTION & PROCEDURAL HISTORY

On August 29, 2005, Plaintiff applied for Supplemental Security Income with a protected filing date of August 1, 2005. (Tr. 58-59). Considine alleged that she became disabled on September 1, 2003.[1] *Id.* Her application for benefits was denied initially and upon reconsideration. (Tr. 22, 24). Subsequently, Plaintiff timely requested and was granted an administrative hearing. (Tr. 27, 37-38, 41). On December 8, 2008, Plaintiff appeared with counsel and testified at a hearing held before

---

[1] During the hearing, Plaintiff amended her onset date to August 1, 2005. (Tr. 504).

Administrative Law Judge Carol Baumerich (the "ALJ" or "ALJ Baumerich"). (Tr. 500-47). Vocational expert, Ted Macy (the "VE"), and medical expert, Dr. Joseph Steiner (the "ME"), also appeared and testified. (Tr. 521-47). On March 31, 2009, the ALJ issued an unfavorable decision, in which she applied the five-step sequential evaluation,[2] and concluded that Plaintiff had not established that she was disabled, and therefore, was not entitled to benefits. (Tr. 10-21). Considine requested review of the ALJ's decision from the Appeals Council. (Tr. 6). However, on July 28, 2009, the Appeals Council denied Plaintiff's request, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 2-4).

Plaintiff, born on March 14, 1987, was 18 years old as of her alleged onset date, and considered a younger person for Social Security purposes. *See* (Tr. 22); 20 C.F.R. § 404.1563(c).

---

[2] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

She is a high school graduate and has no past relevant work experience. (Tr. 398, 538).

## II. MEDICAL EVIDENCE

Plaintiff's complaints of fatigue and dizziness started well before her amended onset date, and are documented as far back as 2002. (Tr. 254). Between 2002 and 2004, Considine sought treatment at Hackett Medical regarding her symptoms. (Tr. 237-54). On December 3, 2003, a physician at Hackett Medical diagnosed Plaintiff with fibromyalgia. (Tr. 245). She also had trouble sleeping and concentrating. (Tr. 243).

In April of 2004, Plaintiff presented to Dr. Harold Bowersox.[3] (Tr. 405, 423). Considine complained to him of tiredness, and pain and tenderness all over her body. (Tr. 423). On April 27, 2004, she informed Dr. Bowersox that she also experienced problems with concentration, but that her pain was not as bad. (Tr. 422). Dr. Bowersox's treatment notes in September of 2004 and January of 2005, reveal that Considine reported experiencing significantly less pain. (Tr. 416, 413). In March of 2005, Plaintiff again complained of pain in her back and wrists. (Tr. 410). In his treatment note dated March 24, 2005, Dr. Bowersox stated that Considine's "symptoms [were] all very vague." (Tr. 409). Dr. Bowersox diagnosed Plaintiff with fatigue and possible lupus in April of 2005. (Tr. 408).

On May 26, 2005, Dr. Peggy Ashenberg conducted a psychotherapy initial assessment on Plaintiff. (Tr. 339-42). Dr. Ashenberg noted that Plaintiff presented with fibromyalgia. (Tr. 341). Additionally, Dr. Ashenberg opined that Considine needed to sort out her emotions and stress and learn breathing techniques. (Tr. 342).

---

[3]The copies of Dr. Bowersox's records filed with the Court are difficult to decipher, but neither party contested the accuracy of the information the other side alleged was contained within Dr. Bowersox's treatment notes.

On November 7, 2005, Plaintiff presented to Dr. Timothy Kowalski for a consultation regarding Plaintiff's problems with sleeping. (Tr. 312). The following day, Dr. Kowalski penned a letter to Dr. Bowersox outlining his assessment of Considine. (Tr. 457-58). In the letter, Dr. Kowalski stated that Plaintiff suffered from sleep cycle shift, fibromyalgia, excessive daytime somnolence, and possibly hyperthyroidism. (Tr. 457). He recommended that Plaintiff maintain a sleep diary and slowly adjust her sleeping patterns by adjusting the time she awakened each day. (Tr. 458). Dr. Kowalski's notes from February of 2006, state that Plaintiff did not adhere to his recommended treatment. (Tr. 314).

Plaintiff's final office visit with Dr. Bowersox was on November 16, 2005. (Tr. 268, 407). He noted that Plaintiff complained of dizziness and that her toes swelled at times. *Id*. In April of 2006, Dr. Bowersox wrote a letter to the Bureau of Disability Determination addressing Plaintiff's impairments. (Tr. 405-06). In the letter, Dr. Bowersox stated that Considine suffered from fibromyalgia with associated chronic fatigue syndrome and Kleine-Levin syndrome. *Id.* He indicated that Plaintiff displayed pain in 18 out of the 18 tender points tested for fibromyalgia. (Tr. 405). Dr. Bowersox concluded that these impairments rendered Considine "totally temporarily disabled" as "she w[ould] be disabled for more than 12 months." (Tr. 406).

On May 5, 2006, Plaintiff underwent a consultative psychological evaluation by Dr. J. Joseph Konieczny. (Tr. 398-401). He commented that Plaintiff was home tutored during her last two years of high school due to her medical problems, and remarked that she continued to experience significant pain and fatigue due to her fibromyalgia. (Tr. 398-99). Dr. Konieczny diagnosed Considine with depressive disorder, psycho-social stressors, and a global assessment of functioning score of 50. (Tr. 401).

4

On May 8, 2006, Dr. Anthony Berardino, a chiropractor, examined Plaintiff. (Tr. 403). Dr. Berardino noted that Considine suffered from generalized hypersensitivity to palpation and muscle weakness. *Id.* Additionally, Dr. Berardino stated that Plaintiff should not perform any lifting or physical activity. *Id.*

In June of 2006, state agency physician, Dr. Rebecca Neiger, reviewed Plaintiff's record and assessed her residual functional capacity ("RFC"). (Tr. 371-77). Dr. Neiger acknowledged Plaintiff's fibromyalgia diagnosis from 2002, but also highlighted that "[r]ecent office notes indicate[d] a grossly normal exam of [Considine's] head and neck, chest, abdomen, extremities and neuro systems." (Tr. 372). Dr. Neiger opined that Plaintiff had the ability to lift or carry 20 pounds occasionally, 10 pounds frequently, stand, walk, or sit for roughly six hours in an eight hour workday, and an unlimited ability to push and pull. *Id.* Finally, the doctor indicated that Dr. Bowersox's opinions were not supported by his findings. (Tr. 377). On February 21, 2007, state agency physician, Dr. Teresita Cruz, affirmed Dr. Neiger's findings as written. (Tr. 378).

On October 6, 2006, Plaintiff presented to Dr. Elizabeth Roter, a doctor of internal medicine. (Tr. 334). Dr. Roter's treatment notes reveal that Plaintiff complained of pain all over her body, poor sleep patterns, migraines and dry eyes. *Id.* Dr. Roter also noted that Plaintiff exhibited pain in 18 tender points. *Id.* In addition, she remarked that Plaintiff did not participate in physical therapy or a regular exercise regimen. *Id.*

In March of 2007, Dr. Bowersox completed a Medical Source Statement evaluating Plaintiff's physical RFC. (Tr. 265-66). He noted that Considine's fibromyalgia and chronic fatigue syndrome affected her ability to lift, carry, stand, walk, and sit, however, he did not specifically state the extent to which her impairments affected her ability to perform these tasks. Dr. Bowersox further indicated that she should rarely or never climb, crouch, crawl, reach, push or pull, and that Plaintiff would

5

require a sit/stand option. (Tr. 265-66).

On November 25, 2008, Dr. Berardino completed a Medical Source Statement. (Tr. 178-79). He opined that Plaintiff retained the RFC to lift or carry up to 15 pounds. (Tr. 178). However, he also noted that Plaintiff could lift or carry up to 20 pounds occasionally, 10 pounds frequently, and that neither her ability to stand, walk or sit was affected by her impairment. *Id.* Additionally, Dr. Berardino indicated that Considine should rarely or never climb, crawl, push, pull, or gross manipulate, but that she could occasionally balance, stoop, crouch, kneel, reach, handle, feel, and fine manipulate. (Tr. 179). The chiropractor further noted that Plaintiff would require a sit/stand option and that she experienced moderate pain. *Id.* He stated that his findings were supported by hair analysis tests which he performed on Considine. *Id.*

### III. ALJ'S DECISION

After completing a review of the record, ALJ Carol Baumerich determined that Considine was not disabled under the Social Security regulations. (Tr. 10-21). At step one of the sequential evaluation analysis, the ALJ found that Considine had not engaged in substantial gainful activity since her protective filing date of August 1, 2005. (Tr. 12). At step two, ALJ Baumerich ruled that Plaintiff suffered from the following severe impairments: fibromyalgia with associated chronic fatigue, depressive disorder, not otherwise specified, and adjustment disorder, not otherwise specified. *Id.* However, at step three, the ALJ concluded that Plaintiff's severe impairments did not individually or in combination meet or equal one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 15-16). Before moving to step four, the ALJ found that Considine retained the RFC to perform a range of light work. (Tr. 16-19). The ALJ noted that Plaintiff was limited to simple, routine and repetitive tasks, in an environment free of fast-paced production quotas. (Tr. 16). Because the ALJ concluded that Plaintiff had no past relevant work experience at step four, the ALJ

proceeded to step five, at which stage she ruled that Plaintiff's RFC allowed her to perform jobs which existed in significant numbers in the national economy (Tr. 19-20). Specifically, ALJ Baumerich held that Plaintiff could work as a bench assembler, wire worker, or final assembler. (Tr. 20).

## IV. <u>DISABILITY STANDARD</u>

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V. <u>STANDARD OF REVIEW</u>

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v.*

*Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI. ANALYSIS

Considine attacks ALJ Baumerich's decision on two grounds. First, Plaintiff submits that the ALJ improperly evaluated the medical opinion evidence by: 1) failing to accord controlling weight to the opinions of Plaintiff's treating physicians who treated her fibromyalgia; 2) assigning too much weight to the flawed assessments of the state agency physicians; and 3) relying upon the testimony of the ME, a psychologist, to undermine the findings of Plaintiff's treating physicians regarding her fibromyalgia – a condition affecting Considine's physical, not psychological well-being. Second, Considine argues that the ALJ's assessment of her credibility was faulty.

### A. Medical Opinion Evidence

#### 1. Treating Physicians

When assessing the medical evidence contained within a claimant's file, it is well-established that the ALJ must give special attention to the findings of the claimant's treating source. *Wilson v. Comm'r of Soc. Sec.* 378 F.3d 541, 544 (6th Cir. 2004). The treating source doctrine recognizes that physicians who have a long-standing relationship with an individual are better equipped to provide a complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. § 416.927(d)(2). A treating source's opinion will receive controlling weight if the opinion is (1) well supported by medically acceptable data; and (2) not inconsistent with other substantial evidence of record. 20 C.F.R. § 416.927(d)(2). However, it is "error to give an opinion controlling weight simply because

8

it is the opinion of a treating source." SSR 96-2p. If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must give "good reasons" for the weight actually afforded to the opinion. 20 C.F.R. § 416.927(d)(2). The good reasons requirement ensures that the ALJ applies the treating physician rule and facilitates meaningful review of the ALJ's application of the regulation. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

Considine's argument that ALJ Baumerich should have given controlling weight to Dr. Bowersox's findings is not well-taken because the ALJ stated a sufficient reason for rejecting Dr. Bowersox's findings. The two pertinent opinions rendered by Dr. Bowersox were penned in April of 2006 (stating that Considine was totally temporarily disabled) and in March of 2007 (restricting Plaintiff's ability to perform functional tasks). During the hearing, Considine admitted that she had not seen Dr. Bowersox since 2005. Therefore, Dr. Bowersox's opinions offered in April of 2006, and in March of 2007, over one year after Considine's last visit in November of 2005, would not qualify as those of a treating source triggering application of the treating source rule. *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 744 (6th Cir. 2011) (ruling that opinions offered by the plaintiff's physician one year after the plaintiff's last visit with the physician was not entitled to deference because the physician was no longer the claimant's treating physician at the time the doctor rendered his opinion); *see Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 985-87 (6th Cir. 2009) (implying that plaintiff's physician was no longer a treating source because at the time the doctor provided his findings he had not seen the plaintiff for over three months). ALJ Baumerich appropriately noted this lapse in Dr. Bowersox's treatment of Considine and reasonably declined to assign controlling weight to his opinions.

9

Aside from this finding, ALJ Baumerich also discounted Dr. Bowersox's opinions by stating that they were inconsistent, not supported by his treatment records and related to issues reserved for only the ALJ to decide. The Court agrees that Dr. Bowersox's statement that Plaintiff was "totally temporarily disabled" was not entitled to any deference, as opinions regarding the ultimate question of disability are reserved to the Commissioner. 20 C.F.R. § 416.927(e). However, the ALJ offered little reasoning to support her finding that Dr. Bowersox's opinions were not well-supported and inconsistent. Ordinarily, such a cursory explanation for rejecting a treating physician's opinions would necessitate remand as failing to satisfy the "good reasons" requirement set forth in *Wilson*. *See Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 860-61 (6th Cir. 2011) (ruling that remand is appropriate when an ALJ fails to provide adequate reasons for rejecting a treating physician's opinion, because "an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be sufficiently specific to meet the goals of the good reasons rule."). Yet, in this case, ALJ Baumerich's failure is immaterial because of our finding that Dr. Bowersox was not a treating source at the time he rendered his opinions at issue.

Next, Considine submits that ALJ Baumerich should have assigned controlling weight to the opinions of her treating chiropractor, Dr. Berardino. But, as the ALJ correctly pointed out, only the opinions of treating physicians falling under the category of "acceptable medical sources" are entitled to deference, and a chiropractor does not fall under the regulation's definition of an "acceptable medical source." SSR 06-03p ("[O]nly 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight."); *see* 20 C.F.R. § 416.913(d)(1). Accordingly, the ALJ was under no obligation to afford any heightened deference to the findings of Dr. Berardino.

10

2. State Agency Physicians

Administrative law judges must consider the opinions offered by state agency medical specialists, as these physicians are highly qualified physicians and are experts in Social Security disability evaluation. 20 C.F.R. § 416.927(f)(2)(i). State agency physicians, Drs. Rebecca Neiger and Teresita Cruz, performed a review of the record and opined that Plaintiff retained the capacity to perform light work.[4] ALJ Baumerich explained that she assigned substantial weight to Drs. Neiger and Cruz's opinions in determining Plaintiff's physical RFC for light work. Although these physicians acknowledged Plaintiff's fibromyalgia diagnosis, the doctors concluded that based upon their review of the record, including consideration of Plaintiff's pain associated with her fibromyalgia, Considine was capable of performing light work. The state agency physicians also noted that Dr. Bowersox's suggestion that Plaintiff was totally temporarily disabled was not supported by his findings.

Plaintiff maintains that the ALJ should not have assigned great weight to the state agency physicians' assessments of her abilities because the doctors did not properly evaluate Plaintiff's fibromyalgia. Specifically, Considine argues that the state agency physicians erroneously based their RFC findings on a consideration of the objective medical evidence. In response, the Commissioner asserts that the state agency physicians' opinions adequately accounted for Plaintiff's symptoms and the opinions of Drs. Bowersox and Berardino by acknowledging Considine's diagnosis with fibromyalgia and limiting her to light work.

---

[4]Dr. Neiger drafted the initial findings. Dr. Cruz did not draft an independent assessment of Considine's record, but rather merely confirmed Dr. Neiger's findings as written.

11

Plaintiff's argument has merit.  Dr. Neiger's assessment of Plaintiff's abilities was based, at least to some degree, on her review of the objective evidence in Plaintiff's record and the lack of objective findings showing physical limitations.  In fact, Dr. Neiger commented that Considine's medical records showed "grossly normal exam[s] of [her] head and neck, chest, abdomen, extremities and neuro systems."  (Tr. 372).  The doctor further commented that the record demonstrated that Considine had only moderately reduced strength which affected her ability to lift and carry, but that she was able to perform fine and gross manipulation.  *Id.*  Yet, these types of "normal" test results are often found in fibromyalgia cases and do not by themselves undercut a claimant's allegations of disabling pain.  *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp.2d 986, 990 (N.D. Ohio 2003) (observing that physical examinations of claimants with fibromyalgia "usually yield normal findings in terms of full range of motion, no joint swelling, normal muscle strength and normal neurological reactions.").  Thus, it was not proper for Dr. Neiger to base her RFC assessment upon this information.  *See Rogers,* 486 F.3d at 245 ("Although the [state agency physician] acknowledged that Rogers has fibromyalgia, the limitations he suggested were based upon the lack of objective findings.  Thus, the foundation for the opinion[] offered by [the state agency physician] was the lack of objective findings. . . .  However, in light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant.") (*citing Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988)).  While Dr. Neiger mentioned that her RFC finding considered Plaintiff's pain, it is unclear how much the lack of objective evidence showing debilitating physical impairments influenced Dr. Neiger's ultimate findings.  Based on the totality of Dr. Neiger's comments, it appears that her ultimate conclusion that Considine could perform light

12

work may have been derived from Dr. Nieger's preoccupation with the objective physical findings – which have little relevance in fibromyalgia cases, rather than on the evidence in the record tending to support or detract from Plaintiff's claims of disabling pain and fatigue – factors of great importance in fibromyalgia cases. The problem caused by the ambiguity in Dr. Neiger's comments was further compounded by the ALJ's failure to address her reasons for crediting the opinions of the state agency physicians, despite the ALJ's acknowledgment that objective testing is of little relevance in cases involving fibromyalgia. *See* (Tr. 15). As a consequence, there is no basis for which the Court to conclude that ALJ Baumerich recognized this ambiguity in Dr. Neiger's comments, or made an attempt to explain why Dr. Neiger's findings remained admissible.

The Court also notes that Dr. Neiger's rejection of Dr. Bowersox's opinions was based upon the physicians' opinions that there were no physical findings to support Dr. Bowersox's limitations. But, as previously discussed, fibromyalgia is not a condition in which physical findings will reveal the actual level of limitation. *See Swain*, 297 F. Supp.2d at 990.[5] Because ALJ Baumerich's ruling on Considine's RFC was founded upon the flawed RFC assessments rendered by these state agency physicians, the undersigned finds that the ALJ's RFC finding was not supported by substantial evidence. Consequently, this case must be remanded back to the Social Security Administration for further consideration.

Though several medical opinions in the record confirmed Plaintiff's diagnosis of fibromyalgia and the ALJ's opinion did not dispute this finding, by no means does the Court's

---

[5]Dr. Neiger specifically referenced Dr. Bowersox's office records from April and November of 2005 and April of 2006. Although the Court finds that Dr. Bowersox's opinions from April of 2006 were not entitled to deference because Dr. Bowersox was no longer treating Considine at that time, Dr. Bowersox's opinions rendered in 2005 are relevant as this is the time frame in which Dr. Bowersox was acting as Plaintiff's treating physician.

decision today suggest that the mere diagnosis of fibromyalgia denotes that a claimant is disabled. It is clear that a claimant must show not only that she has been diagnosed with fibromyalgia, but also that the condition is of such a severity as to be disabling. *See Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (*citing Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)) ("Some people may have a severe case of fibromyalgia as to be totally disabled from working . . . but most do not and the question is whether the claimant is one of the minority."). The question before the ALJ was whether Plaintiff's combined impairments precluded her from performing substantial gainful activity. Moreover, the task now before the Court is to determine whether the ALJ's decision is supported by substantial evidence. ALJ Baumerich's decision indicated that her RFC finding reflected the opinions of the state agency physicians, who the Court concludes arguably based their opinions upon improper considerations. Hence, the ALJ's RFC regarding Plaintiff's physical capabilities fails. While the Court acknowledges that there does not appear to be overwhelming evidence to support Plaintiff's claim for benefits, we must constrain our review of the record to a determination of whether ALJ Baumerich's decision is supported by substantial evidence and whether the ALJ applied the proper legal standards. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (*citing Richardson v. Perales*, 402 U.S. 389 (1971)). On remand, the burden remains on Plaintiff to establish her entitlement to disability benefits. *See Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).

Plaintiff raised one final issue with regard to the state agency physicians' opinions which does not merit much discussion. Considine maintains that the state agency physicians should not have discredited Dr. Bowersox's findings because his findings were supported by Dr. Roter's findings. Because the undersigned has already concluded that the state agency physicians opinions

were founded upon improper considerations, it is not necessary to delve too deeply in this issue. While Dr. Roter noted that Plaintiff suffered from fibromyalgia and had significant other symptoms, his treatment note does not reflect any restrictions on Plaintiff's ability to work. Additionally, Dr. Roter only examined Plaintiff on one occasion, and this visit occurred in October of 2006, nearly one year after Dr. Bowersox stopped treating Plaintiff. Accordingly, even a favorable review of Dr. Roter's opinion would not compel the ALJ and/or state agency physicians to conclude that Dr. Roter's opinion was sufficient to substantiate Dr. Bowersox's opinions. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (finding that there is no requirement that an ALJ give any special deference to a physician who has only examined the claimant one time).

### 3. Medical Expert

Finally, Considine attacks ALJ Baumerich's reliance upon the testimony of the medical expert testifying at the hearing because the ME testified that he was a psychologist, and could not offer expert testimony regarding the pain or physical symptoms associated with fibromyalgia. During the hearing, the ME explained that because he did not attend medical school, he was unqualified to testify regarding the physical aspects of Considine's fibromyalgia. Therefore, Plaintiff claims that there was no medical expert at the hearing who could testify regarding the physical aspects of her condition – the impairment upon which Plaintiff bases her claim for disability. Considine accuses the ALJ of confusing Plaintiff's diagnosis of fibromyalgia with other psychological impairments which may plague Plaintiff. Plaintiff notes that at one point, the ALJ even asked the ME whether the record appeared to over-emphasize Plaintiff's physical conditions; to which the ME responded in the negative and further confirmed that neither did he see any signs that Plaintiff was exaggerating her symptoms.

Regrettably, the Commissioner did not respond to this argument set forth by Considine. Although the ALJ's examination of the ME suggests that the ALJ may have questioned the severity and legitimacy of the symptoms linked to Plaintiff's fibromyalgia, the face of ALJ Baumerich's opinion does not lead the Court to conclude that the ALJ confused Plaintiff's fibromyalgia with her other psychological maladies. Instead, the ALJ strictly limited her discussion of the ME's testimony to issues relating to Plaintiff's mental health. Nonetheless, on remand it may be helpful for the ALJ to seek the opinion of a physician who is capable of testifying regarding Plaintiff's limitations due to her fibromyalgia.

### B.  Plaintiff's Credibility

The Court notes that fibromyalgia is an "elusive" and mysterious disease which produces no objectively alarming signs. *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 990 (N.D. Ohio 2003). The disease has no known cause or cure and there are no clinical or laboratory tests to determine its existence or severity. *Id*. Because the disease cannot be objectively verified, "subjective complaints play an important role in the diagnosis and treatment of the condition, and justification for discounting a claimant's statements is particularly important." *Rogers,* 486 F.3d at 248 (*citing Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985)). It is the ALJ's responsibility to make decisions regarding the credibility of witnesses. "An ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Vance,* 260 F. A'ppx at 806 (*citing Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)). Notwithstanding this standard, the ALJ must clearly state her reasons for rejecting a claimant's complaints as incredible. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). The Social Security

16

regulations set forth the criteria an ALJ should consider when evaluating a claimant's credibility. 20 C.F.R. § 416.929(c)(3)(i)-(vii).

The Sixth Circuit has further explained that "[s]ubjective complaints of pain or other symptoms shall not alone be conclusive evidence of disability." *Vance*, 260 F. App'x at 806 (*citing Arnett v. Comm'r of Soc. Sec.*, 76 F. App'x 713, 716 (6th Cir. 2003) (internal quotations omitted)). This circuit has established a two part test to evaluate a claimant's complaints of disabling pain when the claimant's pain forms the basis of her disability claim. *Rogers*, 486 F.3d at 247. First, the ALJ must determine whether there is "an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms." *Id*. (*citing* 20 C.F.R. § 416.929(a)). If the first test is satisfied, the ALJ must evaluate "the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Id.* Social Security Ruling 96-7p lists the factors relevant to the ALJ's determination at this step. These factors include: the individual's daily activities, the frequency and intensity of the individual's pain or other symptoms, any medication the individual takes or has taken to alleviate pain or other symptoms, and treatment, other than medication, the individual has received for relief of pain or other symptoms. SSR 96-7p.

Although ALJ Baumerich found that Plaintiff's conditions could reasonably be expected to cause her alleged symptoms, the ALJ concluded that Considine's statements regarding the intensity, persistence and functionally limiting effects of her pain were not substantiated by the record. The ALJ discounted Plaintiff's credibility for several reasons. First, the ALJ noted that during the hearing, Plaintiff admitted that her symptoms were less severe than they previously were when she was bedridden in the eleventh grade. Next, the ALJ highlighted that Plaintiff's doctors had not

17

prescribed her any medications on a regular basis, and that she was only treating her condition by taking vitamins and other supplements which her mother believed would improve her condition. Finally, ALJ Baumerich stated that she discredited Plaintiff's allegations because Considine did not participate in recommended regular exercise or physical therapy. Therefore, the ALJ found that Plaintiff's "lack of more aggressive medical management/physical therapy serv[ed] to detract from the alleged severity of her subjective complaints." (Tr. 18). ALJ Baumerich was also disturbed by Plaintiff's failure to establish a treatment relationship with a new physician after leaving Dr. Bowersox's care.

Since this case is being remanded, the ALJ should also reconsider her finding regarding Plaintiff's credibility. While some of the ALJ's stated reasons for discrediting Plaintiff are supported by the record, other of ALJ Baumerich's statements do not appear to have support. On one hand, it was appropriate for the ALJ to consider any change in the severity of Plaintiff's impairment as part of her credibility analysis, particularly if the ALJ concluded that Plaintiff's condition had improved or remained stable. *See Vance*, 260 F. App'x at 807. For example, the ALJ recited a list of medical evidence demonstrating that Plaintiff's condition had somewhat improved prior to her onset date. But, on the other hand, ALJ Baumerich's decision to discredit Plaintiff based upon her failure to participate in regular exercise or physical therapy causes some concern. Though exercise is noted as being beneficial for fibromyalgia patients, "the fact that a patient is encouraged to remain active does not reflect the manner in which such activities may aggravate the patient's symptoms." *Rogers*, 486 F.3d at 249. Thus, despite the fact that Considine admitted that exercising helped her, she consistently maintained that it was difficult for her to be active because she felt so tired and sick. Additionally, the ALJ's opinion seems to be somewhat internally inconsistent on

this issue.  While the ALJ noted that Plaintiff had not engaged in a regular exercise routine, the ALJ highlighted that Plaintiff admitted that she had recently begun walking on the treadmill and in the past used relaxation techniques such as walking and exercising with home fitness equipment.  Thus, the ALJ's opinion itself appears to suggest that Considine did at least participate in minimal exercise activities.  Accordingly, the ALJ should not have used Plaintiff's exercise regimen, or lack thereof, as a deterrent to finding her testimony credible.  *See Crabtree v. Astrue*, No. 3:09-CV-320, 2010 WL 3009592, at *8 (E.D. Tenn. July 1, 2010); *Kalmbach*, 409 F. App'x at 865.  Likewise, to the extent that ALJ Baumerich undermined Considine's credibility based on her failure to seek more aggressive physical therapy, this decision was also flawed for the same reasons enumerated above.

## VII.  DECISION

For the foregoing reasons, the Magistrate Judge **REVERSES** and **REMANDS** the decision of the Commissioner to the Social Security Administration for further proceedings not inconsistent with this opinion.

s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date: September 13, 2011.